## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| **ROBIN SEALE AND**<br>**LAWRENCE "JR" SEALE** | **PLAINTIFFS** |
| | **CAUSE NO.:** 3:19cv213-NBB-RP |
| **v.** | |
| **MISSISSIPPI DEPARTMENT OF**<br>**TRANSPORTATION, ASHLEY**<br>**FURNITURE INDUSTRIES, INC.,**<br>**S&S EXCAVATION, LLC, AND**<br>**PONTOTOC COUNTY BOARD OF**<br>**SUPERVISORS** | **DEFENDANTS** |
| | **JURY TRIAL DEMANDED** |

## COMPLAINT

## INTRODUCTION

1. This is a citizens' suit brought pursuant to Section 505 of the Federal Water Pollution Control Act (the "Clean Water Act"), 33 U.S.C. § 1365 for Defendants, Mississippi Department of Transportation ("MDOT"), S&S Excavation, LLC, and the Pontotoc County Board of Supervisors' violation of the Clean Water Act and the Mississippi Water Quality Standards, pursuant to the Clean Water Act (hereinafter "CWA").

2. Plaintiffs would also show that Defendants have committed public and private nuisance, trespass, negligence, and that Pontotoc County Board of Supervisors and MDOT have inversely condemned the Plaintiffs' property.

3. Since November 2016, continuing to the present and expected to continue through the future, the Mississippi Department of Transportation, S&S Excavation LLC, and Ashley

Furniture Industries Inc., in agreement, assistance, and under the oversight of the Pontotoc County Board of Supervisors (collectively "Defendants"), have polluted and continue to pollute Johns Creek and Seale Pond (constituting wetlands of the creek, and as containing headwaters of Johns Creek), on the private property owned by Robin Seale and Lawrence "JR" Seale ("Plaintiffs") via unauthorized discharges caused Defendants in violation of the CWA. These discharges consist of storm water mixed with, but not limited to, wastewater, sand, silt, garbage, and industrial waste.

4. Based on information and reasonable belief, these illegal discharges continue to occur with every, or almost every, rain event and are continuous and ongoing.

5. Each and every such discharge by Defendants and the subsequent pollution constitute: (1) a violation of the Clean Water Act; (2) a violation of Mississippi's State Water Quality Standards; (3) negligence; (4) a public nuisance; (5) a private nuisance; (6) trespass; and that these damages have amounted to (7) an inverse condemnation, as the tortfeasors, MDOT and the Pontotoc Board of Supervisors are government bodies.

6. Together by these discharges and the subsequent pollution, the tortfeasors, MDOT and the Pontotoc Board of Supervisors have inversely condemned Plaintiff's property by significantly diminishing the market value of the property, such that Plaintiffs can no longer enjoy their property.

7. Ashley Furniture made unauthorized discharges from a point source into Johns Creek and Seale Pond, violating its NPDES Permit.

8. Ashley Furniture failed to obtain a stormwater discharge permit for Johns Creek until January 14, 2019, so all prior discharges were made in violation of the CWA, as Ashley

did not have a proper permit for any kind of point source discharge into Johns Creek or Seale Pond.

9. After January 14, 2019, Ashley Furniture continued to make unauthorized discharges via a point source into Johns Creek and Seale Pond, in violation of its relevant stormwater discharge permit, the conditions of which are covered by the Baseline Storm Water General Permit for Industrial Activities.

10. Defendants MDOT and S&S Excavation have violated their relevant NPDES Permits.

11. Despite Plaintiffs bringing the illegality of the discharges and the pollutions affect on the environment to the attention of Defendants, the Defendants have failed to act appropriately to remedy the damages to Seale Pond, John's Creek, or the Seale's property, nor has the Attorney General, the Environmental Protection Agency ("EPA"), nor the Mississippi Department of Environmental Quality ("MDEQ") taken any action to remedy the situation.

12. Accordingly, Plaintiffs bring this action under the citizen suit provision under Section 505 of the CWA and various state law claims.

## JURISDICTION AND VENUE

13. Plaintiffs, Robin Seale and Lawrence "JR" Seale, bring this citizens' enforcement action under the citizen suit provision of Section 505 of the CWA, 33 U.S.C. §1365(a) against Defendants, Mississippi Department of Transportation, Ashley Furniture Industries, Inc., S&S Excavation, LLC, and the Pontotoc County Board of Supervisors, for violations of the Clean Water Act, 33 U.S.C. §§1251-1346.

14. This Court has jurisdiction over the subject matter of this case pursuant to its federal question jurisdiction under 28 U.S.C. § 1331 and 33 U.S.C. § 1365(a)(1).

15. This court has supplemental jurisdiction over any and all state law claims under 28 U.S.C. § 1367.

16. This court additionally has jurisdiction over Plaintiffs' Takings Claim pursuant to 42 U.S.C. § 1983 without the Plaintiffs first pursuing an inverse condemnation in state court.

17. Furthermore, even without this recent ruling, this Court has supplemental jurisdiction over any inverse condemnation claims under state law or Takings Claims pursuant to the Mississippi Constitution.

18. Venue is proper in this Court pursuant to the Clean Water Act because the source of the discharges is located in this district. 33 U.S.C. § 1365(c)(1).

## NOTICE

19. Plaintiffs provided notice of the violations alleged in this Complaint in a Notice of Intent to File Suit ("the Notice") sent by certified mail to each and every Defendant, the U.S. Attorney General, the Administrator of the EPA, the Administrator of the EPA Region 4, and the Executive Director of MDEQ, and all other relevant parties, hereto attached as Exhibit "A" and incorporated herein by reference.

20. The Notice complies with the CWA, Section 505, 33 U.S.C. § 1365(b).

21. Defendants also received Notice of the same.

22. More than sixty (60) days have passed since Plaintiff provided Notice.

23. Neither any relevant federal or state agency is diligently prosecuting a civil nor criminal action in a court to redress the Defendant's continuing violations.

24. This action is not barred by any prior administrative penalty under Section 309(g) of the Clean Water Act, 33 U.S.C. § 1319(g).

## PARTIES

25. Plaintiffs, Robin Seale and Lawrence "JR" Seale are joint owners of homestead property that consists of ninety-six (96) acres, the pond connected to Johns creek (also known as Seale Pond), through which Johns Creek passes and which contains headwaters of Johns Creek.

26. The Seales' property is located adjacent to a road relocation project, (also known as the QT Todd Road Relocation Project), and is located across from the uncovered lumber yard of Defendant Ashley Furniture.

27. The discharges at issue in this Complaint injure the Plaintiffs by, including but not limited to, impairing their use and enjoyment of their property and Johns Creek, having diminished the fair market value of their property, causing fish kills, impairing the water quality of Seale Pond and Johns Creek, and causing dangerous conditions on the Seale property, such as erosion and flooding.

28. Plaintiff's injuries are actual and concrete, irreparable, and fairly traceable to Defendants' unauthorized discharges. This Court may grant relief to redress these injuries under the CWA.

29. Plaintiffs are a "person" and a "citizen" as defined by the Clean Water Act, 33 U.S.C. § 1362(5).

30. Defendant, Mississippi Department of Transportation, is operating the QT Todd Road Relocation in Pontotoc County, Mississippi.

31. The Defendant, Mississippi Department of Transportation, is a "person" as defined by the Clean Water Act, 33 U.S.C. § 1362(5) and 40 C.F.R. § 122.2.

32. Defendant, Ashley Furniture Industries, Inc., owns property adjacent to the QT Todd Road Relocation Project.

33. The Defendant, Ashley Furniture Industries, Inc., is a "person" as defined by the Clean Water Act, 33 § 1362(5) and 40 C.F.R. § 122.2.

34. Defendant, S&S Excavation, LLC, is contracted with MDOT to complete the road relocation project.

35. The Defendant, S&S Excavation, LLC, is a "person" defined as by the Clean Water Act, 33 § 1362(5) and 40 C.F.R. § 122.2.

36. Defendant, Pontotoc County Board of Supervisors entered into an Agreement with Ashley regarding the QT Todd Road Relocation, entered into an agreement with MDOT to relocate QT Todd Road.

37. The Defendant, Pontotoc County Board of Supervisors, is a "person" as defined by the Clean Water Act, 33 § 1362(5) and 40 C.F.R. § 122.2.

38. The Defendant the Mississippi Department of Transportation can be served via the Attorney General of Mississippi, Jim Hood at 550 High Street, Suite 1200, Jackson, Mississippi 39205.

39. The Defendant Ashley Furniture Industries, Inc. is a Wisconsin corporation that conducts business in Mississippi. It can be served with process via its registered agent, Corporation Service Company at 7716 Old Canton Road, Suite C, Madison, Mississippi 39110.

40. The Defendant S&S Excavation, LLC is a Mississippi corporation. It can be served with process via its registered agent, Laura Sudbeck at 363 Luse Road, Benton, Mississippi 39039.

41. The Defendant, the Pontotoc County Board of Supervisors can be served with process via the Board's clerk, the Chancery Clerk, Ricky Ferguson at 34 South Liberty Street, Pontotoc, Mississippi 38863.

## STATUTORY BACKGROUND

42. The Clean Water Act prohibits "the discharge of any pollutant by any person," except in compliance with the Clean Water Act's permitting provisions. Section 301, CWA; 33 U.S.C. § 1311(a).

43. The term "pollutant" includes "solid waste," "garbage," "chemical wastes," "rock," "sand," and "industrial waste" discharged into water. Section 301, CWA; 33 U.S.C. §1362(6).

44. The terms "discharge of pollutant" and "discharge of pollutants" mean, among other things, "any addition of any pollutant to navigable waters from any point source." Section 301, CWA; 33 U.S.C. § 1362(12).

45. The Clean Water Act defines the term "point source" to include "any discernable, confined and discrete conveyance, including but not limited to any pipe, ditch [or] channel [or] discrete fissure." Section 301, CWA; 33 U.S.C. § 1362(14).

46. "Navigable waters" means "the waters of the United States." Section 301, CWA; 33 U.S.C. § 1362(7).

47. The term "waters of the United States" includes: "intrastate lakes, rivers, streams (including intermittent streams) [...] the use, degradation, or destruction of which would affect or could affect interstate or foreign commerce" and "tributaries of [such] waters." Section 301, CWA; 40 C.F.R. § 122.2.

48. The Clean Water Act establishes a permitting program that allows point source pollutant discharges into navigable water, but only in accordance with the terms of the permit. Section 301, CWA; 33 U.S.C. § 1342(a).

49. The Clean Water Act authorizes "any citizen" to bring suit "against any person (including [...] any governmental instrumentality or agency [...]) who is alleged to be in violation of [...] an effluent standard or limitation" and grants district court jurisdiction "to enforce such effluent standard or limitation [...] and to apply any appropriate civil penalties under section 1319(d) of this title." Section 501, CWA; 33 U.S.C. § 1365(a).

## GENERAL ALLEGATIONS

50. Seale Pond contains headwaters of John's Creek, which is a "waters of the United States" and "navigable water" under the Clean Water Act, Section 301.

51. The storm water drain system created by MDOT, S&S Excavation, and Ashley Furniture is a "discrete conveyance" and a "point source" under the Clean Water Act, Section 301.

52. Ashley Furniture's retention pond is a "discrete conveyance" and a "point source" under the Clean Water Act, Section 301.

53. The ditches created by MDOT, S & S Excavation, and Ashley Furniture are a "discrete conveyance" and "point source" under the Clean Water Act, Section 301.

54. Ashley Furniture's retention pond and "guard shack" are each a "discrete conveyance" and a "point source" under the Clean Water Act, Section 301.

55. Any unauthorized discharge from a point source or discrete conveyance into a "water of the United States," is a violation of the Clean Water Act, Section 301.

56. Under the CWA, the State of Mississippi developed Water Quality Standards. See CWA, Section 303; 40 C.F.R. § 131.

57. As a result of the discharges, Plaintiffs have witnessed their pond, which was once clear, healthy, and supportive of diverse aquatic life, turn dark, turbid, and foamy, become inundated with algae, garbage, silt, turbulence, suspended solids, and stormwater, and have suffered two fish kills.

58. Mississippi Commission on Environmental Quality's "Regulations for Water Quality Criteria for Intrastate, Interstate, and Coastal Waters" states, "Waters shall be free from materials attributable to . . . discharges producing color, odor, taste, total suspended or dissolved solids, sediment, turbidity, or other conditions in such a degree as to create a nuisance, render the waters injurious to public health, recreation, or to aquatic life and wildlife, or adversely affect the palatability of fish aesthetic quality or impair the waters for any designated use." Miss Admin. Code 11-6:2.2(A)(3).

59. "Waters shall be free from substances attributable to municipal industrial agricultural, or other discharges in concentrations or combinations that are toxic or harmful to humans, animals, or aquatic life." *Id.* at (A)(4).

60. Therefore, Defendants have violated the Clean Water Act, Section 301 via unauthorized discharges into a point source and have violated Mississippi's Narrative Water Quality Standards promulgated under Section 303 of the CWA.

61. The Defendants have, in fact, caused unauthorized discharges, constituting Clean Water Act and Mississippi Water Quality Standard violations, into Seale Pond and Johns Creek including but not limited to, on or about: November 11, 2016; November 28, 2016; February 28, 2017; March 7, 2017; April 3, 2017; April 13, 2017; May 13, 2017; May 19, 2017; May 24, 2017; June 2, 2017; June 13, 2017; June 19, 2017; June 28, 2017; February 4, 2018; March 30, 2018; May 16, 2018; June 13, 2018; August 19, 2018;

August 20, 2018; August 21, 2018; February 28, 2019; March 1, 2019; March 7, 2019; April 2, 2019; April 14, 2019; May 5, 2019; May 9, 2019; May 10, 2019, and have continued to the present time.

62. The stormwater, industrial runoff, and pollutants into Seale Pond and Johns Creek have caused fish kills, turbidity, algae growth, and a dramatic decrease in the water quality of Seale Pond and Johns Creek.

63. Furthermore, Defendants have caused flooding and erosion of the Seale property via their unauthorized stormwater discharges.

64. Defendants have caused so much erosion that two vehicles slid from the road and onto the Seale property on or about February 28, 2018.

### *CLEAN WATER ACT CLAIMS AGAINST ASHLEY FURNITURE*

65. *General Allegations* are herein incorporated.

66. Industrial wastes and pollutants enter into Seale Pond via wastewater from vehicle washing that enters Seale Pond and Johns Creek.

67. Ashley Furniture obtained a wastewater permit on November 26, 2018, which covers the wastewater from vehicle washing.

68. The Permit provides that the wastewater is to enter a wastestream, known as Ecru POTW MS0035173, specifically.

69. Upon information and belief this wastewater is being discharged into Seale Pond and Johns Creek via a series of ditches constructed and operated by Ashley Furniture, MDOT, and S & S Excavation.

70. Ashley Furniture is a habitual offender of the Clean Water Act.

71. Ashley Furniture MDEQ sent a Letter of Violation/Warning Letter to Ashley Furniture for non-compliance with its wastewater Permit, and thereby the CWA, regarding other violations than the ones alleged in this Complaint, on the following dates: July 15, 2016; February 14, 2018; August 30, 2018; and September 5, 2018, and two (2) letters were sent on July 12, 2018.

72. Ashley Furniture was assessed a State CWA Penalty of $4,000 on February 12, 2014 for failure to submit timely monthly Discharge Monitoring Reports ("DMRs") for the reporting periods of April 2013 and May 2013.

73. Therefore, Ashley is a habitual CWA offender and is likely to continue its behavior regarding non-compliance with the aforementioned NPDES Permits and future non-compliance with all other relevant NPDES Permits and provisions of the CWA and the Mississippi WQS.

74. Upon information and belief, this wastewater is not just entering the designated wastewater stream, but also Seale Pond and Johns Creek.

75. Ashley does not have a permit to discharge wastewater into Seale Pond and Johns Creek.

76. Ashley Furniture violated its Wastewater NPDES Permit by discharging wastewater to a Surface Water by discharging wastewater into Seale Pond and Johns Creek.

77. Ashley Furniture violated its Wastewater NPDES Permit and state law by injuring private property, invading personal rights, and infringing Federal and State laws and regulations.

78. In addition to the unauthorized wastewater discharges, Ashley Furniture is responsible for other unauthorized discharges from a point source into a "water of the United States."

79. Stormwater, industrial wastes, and pollutants from Ashley enter Seale Pond and Johns Creek via ditches and culverts constructed and operated by Ashley, MDOT, and S & S Excavation.

80. Ashley received a Notice of Violation on or about October 16, 2018 that its facility did not comply with the standards of a No Exposure Storm Water Certification.

81. Ashley Furniture stated that it will require other permits for hazardous waste and for pretreated waste, as of October 9, 2018, in its Baseline Notice of Intent.

82. Thus, Ashley Furniture violated its No Exposure Storm Water Certification, which caused prior unauthorized discharges into Seale Pond and Johns Creek. However, the stormwater discharges are continuing.

83. Ashley Furniture did not obtain NPDES Permit for stormwater discharges into Johns Creek until January 14, 2019, so stormwater and industrial discharges prior to that date were unauthorized discharges under the CWA.

84. Ashley's January 14, 2019 NPDES Permit is covered by the Baseline Storm Water General Permit for Industrial Activities; however, Ashley's continued discharges into Seale Pond and Johns Creek are unauthorized by this Permit and in violation of it.

85. Ashley continued to discharge hazardous waste and pretreated waste along with stormwater mixed with its industrial wastes, sand, silt, and garbage via Defendants' storm water system of drains and ditches. The discharge flows off of Ashley's storage yard entering directly into the storm water system and from there is conveyed into Johns Creek and the pond.

86. The discharges flood Plaintiff's property and are eroding the western bank of the pond, upon which Plaintiff's private road and means of accessing Plaintiff's land is located.

87. The discharges caused vehicles to slide off of QT Road and onto the Seale property.

88. The discharges have caused odors, turbidity, suspended solids, garbage, waste, silt, sand, storm water, soil, algae growth, fish kills, decreased water clarity, erosion, flooding, and other damages to Seale Pond and Johns Creek.

89. Ashley Furniture violates its stormwater permit by causing or contributing to violations of the State Water Quality Standards, or violations of those WQS.

90. Ashley Furniture violates its stormwater permit by failing to obtain an additional stormwater permit for construction purposes, as that relates to ditches, culverts, and its "guard shack," when it was found in violation of a No Exposure Certification.

91. Ashley Furniture has failed to comply with the standards of developing and failed to outline the minimum components of its required Storm Water Pollution Prevention Plan (SWPPP).

92. Ashley Furniture violates its stormwater permit by failing to comply with the SWPPP.

93. Ashley Furniture violates it stormwater permit by failing to ensure that storm water discharges are free from debris, scum, and other floating material; eroded solids and other materials that will settle to form objectionable deposits in receiving waters; suspended solids, and turbidity and color at levels inconsistent with the receiving waters.

94. Ashley Furniture violates its stormwater permit by failing to comply with all conditions of its permit; failing to mitigate unauthorized discharges likely to adversely affect human health or the environment; violating the private property rights of the Seales; and failing to operate and maintain facilities to meet compliance with the permit.

95. Ashley Furniture is in violation for excess of those Permits by violating the Mississippi Water Quality Standards promulgated under Section 303, CWA; 40 C.F.R. § 131.

96. Ashley Furniture is in violation of the Mississippi Air and Water Pollution Control Law, and therefore; subject to the liabilities and penalties under such.

97. On or about May 10, 2019, Defendant Ashley Furniture began construction on a guard shack.

98. The "guard shack" now causes overflow and dirt to bypass Ashley Furniture's holding pond and flow directly onto the Seales' property via a diagonally placed culvert under the new road directly across from Seale Lane.

99. Each and every discharge of industrial wastes and pollutants via MDOT's storm water drain system and into Johns Creek and the pond since at least November 2016 violate the Clean Water Act. See CWA, Section 301, 303; 33 U.S.C. § 1311(a); 33 U.S.C. § 1313.

100. Ashley Furniture's unauthorized discharges occur with every, or near every, rainfall event.

101. Ashley Furniture physically invaded and continues to invade the property via wastewater, storm water and other pollutant discharges.

102. Upon information and belief, additional unauthorized discharges have continued to occur and are likely to continue to occur.

103. The unauthorized discharges are not lawful bypasses under Ashley Furniture's permits.

104. The unauthorized discharges are avoidable.

105. Feasible alternative to the discharges exist in the form of installation of adequate equipment, maintenance, and repair of the storm water drain system.

106. Defendants' physical invasion of the property caused third parties to trespass on the land when two vehicles ran off of the road and slid onto the Seale property on or

around February 22, 2019, as a result of Defendants' physical invasion and flooding caused by Defendants.

107.    Ashley Furniture's unauthorized discharges of pollutants into Johns Creek and Seale Pond via ditches, culverts, and its retention pond since at least November 2016 violate the Clean Water Act. See 33. U.S.C. § 1311(a).

108.    The discharges at issue in this Complaint are ongoing, and upon information and belief will continue until and unless enjoined by this Court.

109.    Ashley Furniture has not taken all reasonable steps to minimize or prevent any discharge in violation of their permit as evidenced by the ongoing discharges alleged in this complaint.

110.    Ashley Furniture is in violation of the above NPDES Permit conditions.

111.    These discharges by Ashley Furniture violate Mississippi's WQS. (See *General Allegations* herein).

112.    Therefore, Defendants have violated Mississippi's Water Quality Standards

113.    33 U.S.C. § 1365(f) empowers citizens (including the Plaintiffs) to enforce, inter alia, conditions of a Clean Water Act permit.

114.    Thereby, by making unauthorized discharges, either for discharges for which the parties did not have a permit or discharges in violation of the parties' permits, from a point source into a navigable water and by violating the Mississippi Water Quality Standards, Ashley Furniture has violated the Clean Water Act and are likely to continue violations in the future.

### *CLEAN WATER ACT CLAIMS AGAINST MDOT & S&S EXCAVATION*

115.    *General Allegations* are herein incorporated.

116.    The Mississippi Department of Transportation ("MDOT") is permitted by the Mississippi Department of Environmental Quality ("MDEQ") to discharge into Johns Creek only storm water associated with the construction of road relocation at QT Todd Road under a Large Construction Storm Water General NPDES Permit.

117.    S & S Excavation is covered by and must comply with the same permit MDOT is covered under via a Prime Contractor Certification.

118.    S&S Excavation contracted with MDOT to perform the road relocation project and entered into a Prime Contractor Certification with MDEQ which provides S&S Excavation has "operational control over the erosion and sediment control specifications" or has "day-to-day operational control of those activities at the site necessary to ensure compliance with the SWPPP and applicable permit conditions."

119.    The Permit provides that MDOT's permit states that it does not authorize "discharges which result in violation of State Water Quality Standards."

120.    Under the CWA, the State developed Water Quality Standards. 40 C.F.R. § 131.

121.    The aforementioned discharges violate the Narrative Standards of Mississippi's Water Quality Standards promulgated under the CWA.

122.    MDOT and S & S Excavation violated its NPDES Permit by failing to ensure that their storm water discharges would be free from eroded solids and other materials that will settle to form objectionable deposits in receiving waters; suspended solids, turbidity and colors at levels inconsistent with the receiving waters.

123.    MDOT and S & S violated their NPDES permit by failing to take all reasonable steps to minimize or prevent any discharge in violation of this permit which is likely to adversely affect human health or the environment.

124.     MDOT and S & S violated their NPDES permit by failing to comply with their permit or the Mississippi Air and Water Pollution Control Law.

125.     MDOT and S&S Excavation have discharged into Johns Creek and the pond storm water mixed with sand, silt, garbage, and Ashley Furniture's discharges via the storm water system of drains and ditches MDOT and S&S constructed as part of the road relocation project.

126.     MDOT and S&S's discharges are unauthorized because they violate the terms of their Large Construction Storm Water General NPDES Permit.

127.     Upon information and belief, additional unauthorized discharges have continued to occur and are likely to continue to occur.

128.     The unauthorized discharges are not lawful bypasses under MDOT and S&S's permit.

129.     The unauthorized discharges are avoidable.

130.     Feasible alternative to the discharges exist in the form of installation of adequate equipment, maintenance, and repair of the storm water drain system.

131.     Defendants' physical invasion of the property caused third parties to trespass on the land when two vehicles ran off of the road and slid onto the Seale property on or around February 22, 2019, as a result of Defendants' physical invasion and flooding caused by Defendants.

132.     MDOT and S&S's discharge of pollutant from its storm water drain system and into Johns Creek and the pond since at least November 2016 violate the Clean Water Act. See 33. U.S.C. § 1311(a).

133.    The discharges at issue in this Complaint are ongoing, and upon information and belief will continue until and unless enjoined by this Court.

134.    MDOT and S&S have not taken all reasonable steps to minimize or prevent any discharge in violation of their permit as evidenced by the ongoing discharges alleged in this complaint.

135.    MDOT and S&S are in violation of the above NPDES Permit conditions.

136.    These discharges by MDOT and S & S Excavation violate Mississippi's WQS.

137.    Therefore, Defendants have violated Mississippi's Water Quality Standards.

138.    MDOT's actions regarding its CWA violations and construction activities, including but not limited to, constructing ditches and culverts and performing construction, were ministerial in nature because federal and state law, and the NPDES permit issued to it promulgated under federal and state law, mandate compliance with the CWA, the Mississippi Air and Water Pollution Control Law, the Mississippi WQS, and all other relevant environmental regulations.

139.    33 U.S.C. § 1365(f) empowers citizens (including the Plaintiffs) to enforce, inter alia, conditions of a Clean Water Act permit.

140.    Thereby, by making unauthorized discharges, either for discharges for which the parties did not have a permit or discharges in violation of the parties' permits, from a point source into a navigable water and by violating the Mississippi Water Quality Standards, MDOT, S&S Excavation, have violated the Clean Water Act and are likely to continue violations in the future.

### *STATE LAW NEGLIGENCE CAUSE OF ACTION*

141.     Defendants owed Plaintiffs as adjacent land owners a duty to ensure that the QT

Todd Road relocation project was completed without damage to Plaintiffs' property and

without the threat of continued damage through the unauthorized discharges alleged in

this complaint.

142.     Defendants breached this duty through the unauthorized discharges alleged in this

complaint.

143.     Defendants, in fact, caused the damages to the Seale property, Seale Pond, and

Johns Creek described herein.

144.     Defendants have suffered mental anguish and property damage as a result of

Defendants' egregious actions.

### *STATE LAW PUBLIC NUISANCE CAUSE OF ACTION*

145.     Circumstances that may sustain a holding that an interference with a public right

is unreasonable include the following: (a) whether the conduct involves a significant

interference with the public health, the public safety, the public peace, the public comfort,

the public convenience; or (b) whether the conduct is proscribed by a statue, ordinance,

or administrative regulation; or (c) whether the conduct is of a continuing nature or has

produced a permanent or long lasting effect, and as the actor knows or has reason to

know, has a significant effect upon the public right.

146.     Miss. Code Ann. § 49-17-29 in part provides,

a.    "[I]t is unlawful for any person to cause pollution of any waters of the state [of

Mississippi]. . . . Any such action is declared to be a public nuisance."

b. "[It is unlawful for any person to . . . place or cause to be placed any wastes in a location where they are likely to cause pollution of any waters of the state [...] Any such action is declared to be a public nuisance.".

c. "It is also unlawful . . . to violate any applicable limitations established by the [Mississippi Commission on Environmental Quality]. Any such action is declared to be a public nuisance."

147.    In addition, Miss. Code Ann. § 49-17-3 provides in part: "Whereas, the pollution of the air and waters of the state constitutes a menace to public health and welfare, creates a public nuisance…"

148.    The pollution by MDOT, S&S, and Ashley's unauthorized discharges, that has deteriorated the conditions of Johns Creek and the pond, is an unjustified public nuisance because it is interfering with the general public's right to use and enjoy Johns Creek and its headwaters in its natural state.

149.    Furthermore, the public's right to travel is infringed by Defendants' actions.

150.    Due to Defendants' flooding and erosion of the Seal Property and nearby road and property, vehicles have slid off of QT Road and onto the Seale Property, thereby endangering the public and infringing on the public right to travel without interference.

151.    The interference with the general public's right is unreasonable because the conduct involves a significant interference with public health and safety, is proscribed by administrative regulation, is of a continuing nature, and is producing a permanent and long lasting effect, which MDOT, S&S, and Ashley know or have reason to know is significantly effecting the public's rights.

152.     The pollution is a public nuisance *per se* as established by Miss Code Ann. § 49-17-29.

153.     The pollution is a public nuisance because it is caused in part by Ashley, MDOT, and S & S Excavation placing their wastes in a location which has caused the pollution of Johns Creek and the pond.

154.     The pollution is a public nuisance because Ashley violated the CWA by discharging stormwater and other materials from a point source into Johns Creek prior to obtaining any stormwater discharge permit, and then upon obtaining such permit on January 19, 2019, violated that permit.

155.     The pollution is a public nuisance because Ashley, MDOT, and S & S Excavation violated the applicable limitations of their relevant NPDES Permits.

156.     Plaintiffs' personal harm as riparian owners is the physical condition of their private property being compromised by the pollution, its market value being significantly diminished, and the Plaintiffs being now unable to use the water in its natural purity nor in the condition in which Plaintiffs have been in the habit of using it.

157.     This harm sustained by Plaintiffs is different in kind and in degree than that suffered by the public at large, and thus, Plaintiffs should be awarded personal damages.

### *STATE LAW PRIVATE NUISANCE CAUSE OF ACTION*

158.     One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either (a) intentional and unreasonable, or (b) unintentional and otherwise actionable under the rules controlling liability or negligent or reckless conduct, or for abnormally dangerous conditions or activities.

159.     MDOT, S&S, and Ashley are responsible for the physical invasion by of pollution into Plaintiffs' pond and Johns Creek.

160.     This physical invasion by the pollution for which MDOT, S&S, and MDOT are responsible is a legal invasion of the Plaintiff's private right to use and enjoy the pond and Johns Creek in their natural purity or in the condition in which the Plaintiff's have been using them.

161.     Plaintiffs' personal harm as riparian owners is the physical condition of their private property being compromised by the pollution, its market value being significantly diminished, and their being now unable to use the water in its natural purity nor in the condition in which Plaintiffs have been in the habit of using it.

162.     Therefore, this Court should award Plaintiffs personal damages for this private nuisance cause of action.

### *STATE LAW TRESPASS CAUSE OF ACTION*

163.     Defendants interfered with the Seales' property via intentional construction and the discharges that resulted were a physical invasion of the Seale property.

164.     The discharges caused damages of erosion and flooding such that the Seales could not use their property.

165.     The discharges caused by Defendants' actions caused third parties to trespass onto the property.

166.     Furthermore, the Defendants' flooding on the road and property, and the erosion they caused, caused two vehicles to slide off of QT Todd Road and onto the Seale Property, thereby constructing the road negligently and causing trespass.

167.     Plaintiffs are entitled to compensatory damages as a result of Defendants' actions.

168.     Plaintiffs are entitled to punitive damages because Defendants' conduct was malicious, grossly negligent, and/or in reckless disregard to the rights of the owner.

### *GOVERNMENT TAKING OF PRIVATE PROPERTY*

169.     MDOT's actions regarding trespass via flooding, erosion, causing vehicles to trespass onto the property, construction activities, and by impairing Seale Pond's water quality by causing including, but not limited to: turbidity, suspended solids, fish kills, algae growth, garbage, silt, sand, stormwater, wastewater, and industrial waste, constitute a government taking under The Takings Clause of the Fifth Amendment of the Constitution of the United States.

170.     The Pontotoc Board of Supervisors' actions in acquiring rights-of-way to QT Todd Road and entering into agreements regarding the project with Ashley Furniture and MDOT, and the consequences of that project, the damages and invasion of the Seale Property constitute a government taking under The Takings Clause of the Fifth Amendment.

171.     Per the Takings Clause of the Fifth Amendment, "private property [shall not] be taken for public use, without just compensation."

172.     The harm is irreparable and permanent, thereby; a permanent physical invasion by the government has taken place.

173.     The Pontotoc County Board of Supervisors by entering into contracts for and funding the road relocation project, from which the subsequent pollution from MDOT, S&S, and Ashley's unauthorized discharges flow, has taken the Plaintiffs' private property for public use without formal condemnation proceedings.

174.     Pontotoc County gave MDOT assistance in obtaining environmental permits and funded the construction that caused stormwater discharges and erosion to the Seale property.

175.     Pontotoc County agreed to ensure that all necessary property interests were acquired for the QT Road construction.

176.     In the alternative to a claim under the Takings Clause of the Fifth Amendment, the Plaintiffs request relief under under Article 3, Section 17 of the Mississippi Constitution, providing that private property shall not be taken or damaged for public use, except on due compensation being made to the owner or owners thereof.

177.     Road construction and stormwater drainage ditches and culverts constitute public use.

178.     MDOT and the Pontotoc Board of Supervisors have committed a taking in violation of The Taking Clause of the Fifth Amendment of the United States Constitution and Article 3, Section 17 of the Mississippi Constitution.

179.     Plaintiffs are entitled to just compensation.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request the following relief:

A. A declaratory judgment that the Defendants are violating the Clean Water Act;

B. An Order enjoining the Defendants from discharging storm water in violation of the Clean Water Act;

C. An Order requiring Defendants comply with Permit Conditions;

D. An Order finding that MDOT and the Pontotoc Board of Supervisors have committed a taking in violation of the Takings Clause of the Fifth Amendment of the U.S.

Constitution, or in the alternative, committed a taking in violation of Article 3, Section 17 of the Mississippi Constitution;

E. Just compensation awarded to the Plaintiffs for the government's taking of the property;

F. Damages be awarded in the amount of the difference in the fair market value caused by Defendants' actions;

G. An Order requiring Defendants take steps necessary to remediate the pond and/or pay for the necessary remediation;

H. Civil Penalties in the amount of $25,000 per day per violation since November 11, 2016 as provided by Clean Water Act § 309(d) and federal regulations. 33 U.S.C. § 1319(d); 40 C.F.R. § 19.4;

I. An award of reasonable attorneys' fees and costs pursuant to the Clean Water Act, 33 U.S.C. § 1365(d) and under all other claims;

J. Damages for the value of harm inflicted by Defendants' trespass and nuisance;

K. Compensatory damages;

L. Punitive damages; and

M. Such other relief as this Court may deem appropriate.

Respectfully submitted this 19th of September, 2019.

ROBIN SEALE & LAWRENCE "JR" SEALE,
PLAINTIFFS

/s/ David E. Rozier, Jr.
DAVID E. ROZIER, JR

Rozier Law Firm
David E. Rozier, Jr. (MSB #5712)
Jenessa Carter Hicks (MSB #103287)
2091 Old Taylor Road, Suite 101
P.O. Box 2388
Oxford, MS 38655
Telephone: 662.234.0065
Fax: 662.234.3007
Email: dave@rozierlawfirm.com
jhicks@rozierlawfirm.com